UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11808-RGS

ANTONIO IBANEZ

v.

U.S. BANK NATIONAL ASSOCIATION, as Trustee for THE STRUCTURED
ASSET SECURITIES CORP. PASS-THROUGH CERTIFICATE SERIES 2006-Z;
AMERICAN HOME MORTGAGE SERVICING, INC.; SAND CANYON CORP.
also known as OPTION ONE MORTGAGE CORP.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS FOR JUDGMENT ON THE PLEADINGS

April 13, 2012

STEARNS, D.J.

This action stems from a seminal January of 2011 decision of the Massachusetts Supreme Judicial Court (SJC). *See U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011). The principal parties involved in that case are the parties here, although their roles are now reversed.[1] In *Ibanez*, the SJC held that U.S. Bank National Association as Trustee for the structured asset securities corporation pass-through certificate series 2006-z (U.S. Bank as Trustee) had not satisfactorily proven (in attempting to obtain a judicial declaration of clear title) that it held the Ibanez mortgage at the time it

---

[1] Defendants Sand Canyon Corp. and American Home Mortgage Servicing, Inc. (AHMSI), were not parties to the state action.

conducted the foreclosure sale, and had thus violated Mass. Gen. Laws ch. 244 § 14, thereby rendering the foreclosure void (and not merely voidable). *See Ibanez*, 458 Mass. at 647-648, 650-652; Compl. ¶¶ 7-16. Ibanez now claims that as a result of defendants' acts and misrepresentations, he has been deprived of the use, possession, and value of the mortgaged property; has lost the funds that he invested in the purchase of the property; and has lost the funds, time, and labor that he invested in rehabilitating the property.[2] Compl. ¶ 18.

BACKGROUND

Ibanez acquired the disputed property located at 20 Crosby Street (Crosby Street) in Springfield, Massachusetts, on December 1, 2005, by virtue of a Quitclaim Deed recorded in the Hampden County Registry of Deeds. *See* Compl. ¶ 1. Ibanez concurrently granted a mortgage to Rose Mortgage, Inc., in the original principal amount of $103,500. *Id*. ¶ 5. The mortgage was then assigned to Option One; defendant Sand Canyon is Option One's successor-in-interest. *Id*. ¶ 4. Ibanez subsequently defaulted on the mortgage loan, and U.S. Bank as Trustee conducted a

---

[2] Ibanez alleges claims of intentional and negligent misrepresentation; breach of the implied covenant of good faith and fair dealing; breach of contract; trespass; and violation of Mass. Gen. Laws ch. 93A.

2

foreclosure sale on the property on July 5, 2007.[3] The foreclosure occurred, however, prior to U.S. Bank as Trustee receiving a formal assignment of the mortgage, making the sale void. *See Ibanez*, 458 Mass. at 643, 647.

Three weeks after the sale, on July 26, 2007, Ibanez filed for Chapter 7 bankruptcy. On the Schedule A listing of real property accompanying the petition, Ibanez listed $1,215,894.32 in secured debt, including the $111,640.26 debt secured by the mortgage on Crosby Street. *See* Sand Canyon Mot. for J. on the Pleadings- Ex. A.[4] Ibanez listed the market value of the property as $97,160. *Id.* On the Schedule D listing of creditors, Ibanez included $111,000 as secured debt owed to Option One, as well as an additional unsecured indebtedness on Crosby Street of $13,840. *Id.* On Ibanez's statement of intention, he indicated that he would surrender Crosby Street, along with five other properties that he owned in Springfield. *Id.* On the Schedule B listing of personal property, Ibanez did not include any potential cause of action against

---

[3] Defendant AHMSI acted as U.S. Bank as Trustee's servicing agent. *Id*. ¶ 3. The foreclosure sale occurred after the publication of the requisite statutory notice. *Id.* ¶ 9.

[4] The bankruptcy petition may be properly considered in deciding a Rule 12(c) motion. *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) ("In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider documents the authenticity of which are not disputed, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint.").

defendants relating to the foreclosure. *Id.* Ibanez (and his spouse) were discharged of their debts pursuant to 11 U.S.C. § 727, on October 24, 2007. *See id.*- Ex. B. On October 31, 2007, the bankruptcy case was terminated pursuant to 11 U.S.C. § 350(a). *See id.*- Ex. C.

In July of 2011, in the wake of the SJC's decision, Ibanez filed a Complaint against U.S. Bank as Trustee, Sand Canyon Corp., and AHMSI in the Superior Court. In October of 2011, AHMSI removed the case on diversity grounds to this court with the assent of U.S. Bank as Trustee and Sand Canyon. *See* 28 U.S.C. §§ 1332, 1441, and 1446. Ibanez then moved to remand the action, but this court denied the motion on November 29, 2011. Defendants now move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

DISCUSSION

Rule 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole. "In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). "Because [a Rule 12(c)] motion calls for an

4

assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2009), quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006). As with a motion to dismiss pursuant to Rule 12(b)(6), to survive a Rule 12(c) motion, the underlying complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

The gist of the matter is this. Ibanez is seeking to capitalize in this court on the holding in the SJC's opinion bearing his name by invoking the wrongful foreclosure of the same property that he surrendered in the Bankruptcy Court in exchange for the discharge of his debts. This, equity will not permit. *See Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010), citing *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003) ("The doctrine of judicial estoppel . . . operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding. . . . The purpose of the doctrine is to protect the integrity of the judicial process. It is typically invoked when a litigant tries to play fast and loose with the courts.").

Ibanez counters that his claim against defendants arose only when the foreclosure deed was executed ten months after the filing of the bankruptcy petition.

5

Thus, Ibanez argues that the claim does not belong to the Trustee in Bankruptcy, but instead to him personally. *Cf.* 11 U.S.C. § 541(a)(1) (defining the property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."). Should the court disagree, Ibanez notes that the Trustee has represented to his counsel that he will not seek to intervene in this case on behalf of the bankruptcy estate. *See* Pl.'s Letter from Feb. 16, 2012 (Dkt # 24).[5]

Even assuming that the execution of the foreclosure deed is the relevant event for purposes of determining when the alleged injury arose (and not the date of the foreclosure sale), Ibanez's surrender of his claim to Crosby Street in the Bankruptcy Court is still fatal to his claims in this court. *See In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006), citing 11 U.S.C. § 521(a)(2) ("[T]he most sensible connotation of 'surrender' in the [Chapter 7] context is that the debtor agreed to make the collateral available to the secured creditor – viz., to cede his possessory rights in the collateral – within 30 days of the filing of the notice of intention to surrender possession of the collateral."). Thus, even were there a claim, it does not belong to Ibanez.

As a last grasp, Ibanez argues that had the void foreclosure not taken place, he

---

[5] According to plaintiff's counsel, the Trustee stated that were the bankruptcy reopened in order to schedule any pre-petition claims arising from this case he would, at present, be inclined to abandon any such claims. *Id*.

might have avoided any injury because he could have received some sort of "loss mitigation measure," a delayed foreclosure date, or, perhaps, defendants might not have pursued the foreclosure to completion. Yet, by Ibanez's own reasoning, the time when defendants "unlawfully deprived [him] of the Property" occurred ten months *after* he had surrendered his interest in Crosby Street. To argue that he was injured by the invalid foreclosure of a property in which he no longer held any legal or equitable interest defies logic.[6]

## ORDER

For the foregoing reasons, defendants' motions for judgment on the pleadings are <u>ALLOWED</u>. The Clerk will enter an Order of Dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[6] If the court looks to the date of the foreclosure sale, Ibanez fares no better. It is simply implausible to believe that had the foreclosing entity been given prior proper authority to foreclose (as the *Ibanez* decision requires), the outcome would have been any different. Sand Canyon – the true mortgagee at the time of the foreclosure – is a co-defendant in this action and neither challenges the void foreclosure nor seeks to recover the foreclosure proceeds. *See* Sand Canyon Mot. for J. on the Pleadings at 7.